FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

20 JUL 23 PM 12: 50

CLERK_____
SO. DIST. OF GA.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA for the use and benefit of SUPERIOR STEEL, INC., | * * * * | |
| Plaintiff, | * * | |
| v. | * * | CV 119-173 |
| B.L. HARBERT INTERNATIONAL, LLC; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; FIDELITY AND DEPOSIT COMPANY OF MARYLAND; and ZURICH AMERICAN INSURANCE COMPANY, | * * * * * * * * | |
| Defendants. | * * | |

**O R D E R**

Before the Court is Defendant B.L. Harbert International, LLC's ("Harbert") motion to compel arbitration and stay pending arbitration. (Doc. 13.) For the following reasons, the motion is **GRANTED**.

**I. BACKGROUND**[1]

**A. The Project**

Defendant Harbert is the prime contractor constructing improvements to the United States Army Corps of Engineers' Cyber Command Headquarters in Fort Gordon, Georgia ("Project").

---

[1] The Court details only those facts necessary to decide the present motion.

(Compl., Doc. 1, ¶ 8; Lalor[2] Aff., ¶ 4.)   Defendant Harbert and Plaintiff Superior Steel, Inc. ("Plaintiff") entered into a subcontract ("Subcontract") on October 17, 2016, under which Plaintiff was to complete structural steel work for the Project. (Compl., ¶ 9; Lalor Aff., ¶ 5; see Subcontract, Doc. 1-1.)   As required under the Miller Act, 40 U.S.C. §§ 3131 et seq., Defendant Harbert took out payment bonds for the Project with Defendants Travelers Casualty and Surety Company of America, Fidelity and Deposit Company of Maryland, and Zurich American Insurance Company (collectively, "Sureties").   (Compl., ¶ 10; Payment Bonds, Compl. Ex. B, Doc. 1-2.)

**B. Payment Dispute**

During construction — and for disputed reasons unnecessary to presently detail — issues arose with Plaintiff's performance under the Subcontract and Defendant Harbert incurred additional costs. (Compl, ¶¶ 11-13; Lalor Aff., ¶¶ 6-8, 10.)   Defendant Harbert deducted costs from amounts otherwise owed to Plaintiff, and Plaintiff demanded payment of the deducted amount.   (Compl., ¶ 16; Lalor Aff., ¶ 8.)   No payment was made.   (Compl., ¶ 17.)   To recover, Plaintiff filed the present suit raising four counts: (I) a breach of contract claim against Defendant Harbert, (II) an unjust enrichment claim against Defendant Harbert, (III) a Miller

---

[2] William Lalor is Defendant Harbert's Vice President.   (Lalor Aff., Doc. 13-1, ¶ 2.)

2

Act bond claim against Defendants Harbert and Sureties, and (IV) a Georgia Prompt Pay Act claim against Defendant Harbert. (Id. ¶¶ 20-33.)

## C. Dispute Resolution Provision

Paragraph 29 of the Subcontract contains the dispute resolution provision, providing: "All disputes between [Defendant Harbert] and [Plaintiff] related in any way to this Subcontract, the Work[,] or the Project shall be resolved in accordance with this [Paragraph] 29." (Subcontract, ¶ 29, at 12-13.[3])  To resolve a dispute, the parties must engage in "direct discussions" and, if necessary, mediation. (Id. ¶ 29(a), (b), at 12.)  If the disagreement nonetheless endures, section (c) provides:

> Unless suit is brought under the Miller Act (40 U[.]S[.]C[.] §§ 3131, et seq.), . . . at [Defendant Harbert]'s sole election, the parties shall submit the disputes to either binding arbitration or to litigation, as further detailed below.

(Id. ¶ 29(c), at 12.)  If Defendant Harbert chooses litigation in lieu of arbitration, section (c) dictates that the claims "shall be resolved by bench trial, without a jury, in the United States District Court for the Northern District of Alabama."[4]  (Id.)

---

[3] For the reader's convenience, the Court cites the PDF page numbers of the Subcontract (Doc. 1-1) as supplied by CM/ECF.  The Court identifies the page number at which to find a paragraph section only once.

[4] According to the Subcontract, the Northern District of Alabama is a proper venue because:

> [Plaintiff] and [Defendant Harbert] agree that this Subcontract has been negotiated, formulated, drafted, agreed upon, executed, and at least in part performed within the jurisdiction of the United States District Court for the Northern District of Alabama, and that

"Should [Defendant Harbert] elect arbitration," section (f) of paragraph 29 applies, requiring a three-arbitrator panel held under the American Arbitration Act's ("AAA") Construction Industry Arbitration Rules ("AAA Construction Rules"). (Id. ¶ 29(f), at 12-13.) In addition, "[Plaintiff] agrees that should it initiate litigation or arbitration without first obtaining [Defendant Harbert]'s authorization as to choice of forum, [Defendant Harbert] shall have the absolute and sole right to transfer the disputes to the other forum." (Id. ¶ 29(e), at 12.)

## D. Procedural Posture

On September 16, 2019, the parties mediated the disputes, but the mediation proved unsuccessful. (Lalor Aff., ¶¶ 16-17.) Plaintiff filed the present suit on September 26, 2019. (See Compl.) Defendant Harbert then filed the present motion to compel arbitration and stay pending arbitration. (Def. Harbert's Mot. to Compel Arbitration, Doc. 13.) Plaintiff responded (Pl.'s Resp. Opp'n Mot. to Compel Arbitration, Doc. 14), Defendant Harbert replied (Def. Harbert's Reply Supp. Mot. to Compel Arbitration, Doc. 17), and Plaintiff sur-replied (Pl.'s Sur-Reply Opp'n Mot. to Compel Arbitration, Doc. 19). Defendant Harbert's motion is now ripe for review.

---

[Plaintiff] has entered into Alabama to negotiate, formulate, draft, execute and perform (at least in part) this Subcontract. (Subcontract, ¶ 29(c).)

4

## II. LEGAL STANDARD

There is an "emphatic federal policy in favor of arbitral dispute resolution." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985). The Federal Arbitration Act ("FAA") requires courts to "rigorously enforce agreements to arbitrate." Davis v. Prudential Sec., Inc., 59 F.3d 1186, 1192 (11th Cir. 1995) (quoting Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987)). "[T]he party seeking to compel arbitration has the initial burden of producing the arbitration agreement and establishing the contractual relationship necessary to implicate the FAA and its provisions granting th[e] [c]ourt authority to dismiss or stay [the] [p]laintiff's cause of action and to compel arbitration." Compere v. Nusret Miami, LLC, 396 F. Supp. 3d 1194, 1199 (S.D. Fla. 2019) (citation and internal quotation marks omitted). If the party for arbitration meets its burden of production, the burden shifts to the party opposing arbitration to show why the court should not compel arbitration. Bhim v. Rent-A-Ctr., Inc., 655 F. Supp. 2d 1307, 1311 (S.D. Fla. 2009).

## III. DISCUSSION

As an initial matter, the Court has subject matter jurisdiction over this dispute because Plaintiff brings a claim

arising under federal law.[5]   28 U.S.C. § 1331; (see also Compl. ¶ 6.)   It also appears to the Court that diversity jurisdiction exists given that there is complete diversity and the amount in controversy exceeds $75,000.00.   28 U.S.C. § 1332; (see Compl., ¶¶ 1-5, 21.)  Defendant Harbert moves the Court to compel Plaintiff to arbitrate Counts I, II, and IV of the Complaint as against Defendant Harbert.  The Court analyzes whether (A) the FAA governs the agreement to arbitrate, (B) the agreement to arbitrate is valid, (C) Defendant Harbert may elect to arbitrate the relevant claims, and (D) the Court should stay this action pending arbitration.

**A. FAA**

The FAA applies to agreements "evidencing a transaction involving commerce."  9 U.S.C. § 2.   The Supreme Court has construed this language broadly, holding that Section 2's "involving commerce" language must be read to extend the Act's reach to the limits of Congress's Commerce Clause power.  Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 268, 277 (1995).

Here, the overall Project was commissioned by the United States government through the United States Army Corps of

---

[5] The FAA does not confer federal subject matter jurisdiction.  See Tamiami Partners, Ltd. ex rel. Tamiami Dev. Corp. v. Miccosukee Tribe of Indians of Fla., 177 F.3d 1212, 1222 (11th Cir. 1999); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 637 F.2d 391, 395 (5th Cir. Unit B 1981) (stating that to compel arbitration under the FAA, the court must have an independent basis of jurisdiction, such as federal question or diversity).

Engineers.   Plaintiff and Defendant Harbert entered into the Subcontract in furtherance of the Contract.   Plaintiff is a Tennessee corporation with its principal place of business in Tennessee.   (Compl., ¶ 1.)   Defendant Harbert is a Delaware corporation with its principal place of business in Alabama. (Compl., ¶ 2.)   The Subcontract was "negotiated, formulated, drafted, agreed upon, executed, and at least in part performed [i]n . . . Alabama."   Finally, the work was to be completed for the Project in Georgia.   The Court finds the Subcontract is a transaction affecting interstate commerce, and the FAA governs. Cf. W.G. Yates & Sons Constr. Co. v. Ard Contracting, Inc., No. 2:04-CV-00664-WKW, 2008 WL 942027, at *2 (M.D. Ala. Apr. 7, 2008) (finding the construction transactions involved interstate commerce when the subcontracts were executed in and payments were mailed from Mississippi, the construction project was in Alabama, materials were purchased outside of Alabama, and the bonds were issued by Nebraska and Maryland companies).

## B. Validity of Agreement to Arbitrate

The Court addresses whether the arbitration provision is (1) initially valid under Alabama law and (2), if so, unconscionable.

### 1. Validity

"Whether an arbitration agreement exists is settled by state-law principles of contract law."   Hefter v. Charlie, Inc., No.

2:16-cv-01805-RDP, 2017 WL 4155101, at *5 (N.D. Ala. Sept. 19, 2017) (quoting Hanover Ins. Co. v. Atlantis Drywall & Framing LLC, 611 F. App'x 585, 588 (11th Cir. 2015)); see also Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1368 (11th Cir. 2005). Where jurisdiction is based on federal question and diversity, the choice of law rules of the state in which the action was filed provide the applicable law. United States ex rel. Duncan Pipeline, Inc. v. Walbridge Aldinger Co., No. CV411-092, 2013 WL 1338392, *10 (S.D. Ga. Mar. 29, 2013) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Because this case was filed in Georgia, the Court looks to Georgia's choice of law requirements. "Absent a contrary public policy, this court will normally enforce a contractual choice of law clause." Carr v. Kupfer, 296 S.E.2d 560, 562 (Ga. 1982). Here, Alabama law applies because the Subcontract contains the following choice of law provision: "This Subcontract shall be governed by, and all matters relating to the validity, performance, or interpretation of this Subcontract[,] shall be determined in accordance with[] the laws of the State of Alabama." (Subcontract, ¶ 34(a), at 13; see also Pl.'s Resp. Opp'n Mot. to Compel Arbitration, at 7 (applying Alabama law); Def. Harbert's Reply Supp. Mot. to Compel Arbitration, at 6-9 (applying Alabama law).)

Under Alabama law, "[t]he basic elements of a contract are an offer and an acceptance, consideration, and mutual assent to the

8

essential terms of the agreement." Halbert v. Credit Suisse AG, 402 F. Supp. 3d 1288, 1322 (N.D. Ala. 2019) (quoting Armstrong Bus. Servs., Inc. v. AmSouth Bank, 817 So. 2d 665, 673 (Ala. 2001)).

Defendant Harbert shows that Plaintiff and Defendant Harbert signed the arbitration provision as within the Subcontract — a transaction affecting interstate commerce. (Subcontract, at 14.) Plaintiff declines to challenge the existence of a contract with an arbitration provision. As such, Defendant Harbert meets its burden of showing an agreement to arbitrate exists. See Hanover, 611 F. App'x at 588-89 (finding the party moving for arbitration met its burden because it pointed to the subcontract that affected interstate commerce and contained an arbitration provision). Thus, the Court finds the arbitration agreement is initially valid and proceeds to Plaintiff's argument that the agreement is nevertheless unconscionable.

2. Unconscionability

Plaintiff argues that the agreement to arbitrate is unconscionable. (Pl.'s Resp. Opp'n Mot. to Compel Arbitration, at 7-9.) "The FAA makes arbitration agreements, 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Kindred Nursing Ctrs. Ltd. v. Clark, 137 S. Ct. 1421, 1426 (2017) (quoting 9 U.S.C. § 2). Unconscionability is one such ground for revocation. Id. As the

party asserting the defense, Plaintiff has the burden to prove unconscionability. Green Tree Fin. Corp. of Ala. v. Wampler, 749 So. 2d 409, 415 (Ala. 1999); Conseco Fin. v. Murphy, 841 So. 2d 1241, 1245 (Ala. 2002). A contract provision is unconscionable when the provision is one that "no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." Blue Cross Blue Shield of Ala. v. Rigas, 923 So. 2d 1077, 1086 (Ala. 2005) (quoting S. United Fire Ins. Co. v. Howard, 775 So. 2d 156, 163 (Ala. 2000) (quoting, among others, Hume v. United States, 132 U.S. 406, 410 (1889))). The Alabama Supreme court set out factors to consider when facing such a challenge:

> In addition to finding that one party was unsophisticated and/or uneducated, a court should ask (1) whether there was an absence of meaningful choice on one party's part[;] (2) whether the contractual terms are unreasonably favorable to one party[;] (3) whether there was unequal bargaining power among the parties[;] and (4) whether there were oppressive, one-sided, or patently unfair terms in the contract.

Id. (quoting Layne v. Garner, 612 So. 2d 404, 408 (Ala. 1992)). This test, reduced to its essential elements, requires showing, first, "terms that are grossly favorable to a party" — substantive unconscionability — and, second, the favored party has "overwhelming bargaining power" — procedural unconscionability. Am. Gen. Fin., Inc. v. Branch, 793 So. 2d 738, 748 (Ala. 2000); Rigas, 923 So. 2d at 1086-87. "[T]he party objecting to

arbitration must show both procedural and substantive unconscionability." Rigas, 923 So. 2d at 1087.   At the outset, the Court notes that, apart from explaining the legal standard, Plaintiff cites no legal support for its contention that the arbitration provision is unconscionable.

> a. *Substantive Unconscionability*

Plaintiff asserts the arbitration provision is substantively unconscionable[6] because the provision "skews heavily in [Defendant Harbert]'s favor" by giving Defendant Harbert the "'sole' ability to determine how disputes are to be resolved, whether it be in a judicial proceeding or in arbitration." (Pl.'s Resp. Opp'n Mot. to Compel Arbitration, at 8.)   And, by choosing arbitration, Defendant Harbert "avoid[s] any discovery of dam[n]ing evidence within its possession" because the arbitration provision provides: "[N]otwithstanding any AAA rules to the contrary, there shall be no depositions taken, and no production of documents or other information."   (Subcontract, ¶ 29(f)(1), at 13; see also Pl.'s Resp. Opp'n Mot. to Compel Arbitration, at 8.)

The fact that Defendant Harbert may choose the forum for resolving disputes does not automatically make the arbitration provision unconscionable because Plaintiff still maintains a remedy.   See Conseco Fin., 841 So. 2d at 1245 (finding the

---

[6] Plaintiff does not use the terms substantive or procedural unconscionability, but the Court categorizes Plaintiff's arguments appropriately.

11

arbitration provision not unconscionable because it "does not limit the kind or amount of damages the [plaintiffs] can recover"); Stinson v. Am.'s Home Place, Inc., 108 F. Supp. 2d 1278, 1286 (M.D. Ala. 2000) (applying Alabama law) ("A court must be wary of finding a contract unconscionable where the plaintiff is left with some place to go[] . . . because denial of a specific remedy or forum is substantively different from denial of any means of enforcement whatsoever.") (internal citation and quotation marks omitted); cf. Ex Parte Merrill Lynch, Pierce, Fenner & Smith, 494 So. 2d 1, 4 (Ala. 1986).

Plaintiff maintains that given the discovery limitation accompanying arbitration, it "will be unable to obtain through arbitration the very same relief that would be otherwise available in a court action." (Pl.'s Resp. Opp'n Mot. to Compel Arbitration, at 9.)  It is true that the Court must consider Plaintiff's ability to obtain the same relief, Roberson v. Money Tree of Ala., Inc., 954 F. Supp. 1519, 1525-26 (M.D. Ala. 1997) (applying Alabama law), however, the Court also notes part of the appeal of arbitration is the "simplicity, informality, and expedition" it provides. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31 (1991). "Discovery limitations promote the goals of the FAA, and such limitations are rarely grounds for avoiding an arbitration agreement." Hopkins v. World Acceptance Corp., 798 F. Supp. 2d 1339, 1350 (N.D. Ga. 2011).  The discovery limitations here apply

12

to both parties equally.  Plaintiff's perceived unfairness rests on the argument that "as the general contractor on the Project, [Defendant Harbert] controlled the Project documentation and information and it wishes to conceal that information from [Plaintiff] by forcing arbitration."  (Pl.'s Resp. Opp'n Mot. to Compel Arbitration, at 8-9.)

The record lacks any actual evidence as to how limited discovery adversely affects Plaintiff while benefiting Defendant Harbert.  The Court finds no legal support for finding an arbitration provision unconscionable solely because it limits discovery.  See Caley, 428 F.3d at 1378 (finding arbitration agreement "consistent with the goals of simplicity, informality, and expedition" — "characteristics that generally make arbitration an attractive vehicle" — when it precluded class actions and "limit[ed] discovery by allowing the taking of depositions only if authorized by the arbitrator"); Hopkins, 798 F. Supp. 2d at 1350 (finding arbitration agreement not unconscionable when it limited discovery beyond the AAA Consumer rules); cf. Walker v. Ryan's Family Steak Houses, Inc., 400 F.3d 370, 387-88 (6th Cir. 2005) (finding "limited discovery, controlled by a potentially biased arbitration panel, creates . . . unfairness to claimants" because even though reduced discovery is anticipated in arbitration, "parties to a valid arbitration agreement also expect that neutral

arbitrators will preside over their disputes"). Furthermore, the Eleventh Circuit stated:

> [T]he Supreme Court cautioned that clauses limiting discovery in arbitration — much like class-action waivers — cannot be rejected as categorically unconscionable under state law without running afoul of the FAA's pro-arbitration mandate. . . . Even if the clause at issue here limited [the plaintiff]'s discovery options in a meaningful way, it would not be substantively unconscionable on that basis alone.

Larsen v. Citibank FSB, 871 F.3d 1295, 1316 (11th Cir. 2017) (internal citation omitted) (citing AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 341–44 (2011)). Based on the foregoing, the Court finds Plaintiff fails to carry its burden of showing the arbitration provision is substantively unconscionable.[7]

b. *Procedural Unconscionability*

As to procedural unconscionability, Plaintiff argues the arbitration provision "was offered on essentially a 'take it or leave it' basis to [Plaintiff]." (Pl.'s Resp. Opp'n Mot. to Compel Arbitration, at 8.) And Plaintiff "lacked a meaningful choice in accepting the provision[] [because] [Defendant Harbert] is one of the largest construction companies in the country with revenue and resources vastly above those of [Plaintiff]." (Id.)

Unequal bargaining power arguments generally do not involve two sophisticated, large companies such as Plaintiff and Defendant

---

[7] Because both substantive and procedural unconscionability are required for a court to find a provision unconscionable, the Court may end its analysis here. The Court, however, addresses Plaintiff's procedural unconscionability argument.

Harbert.  See Leonard v. Terminix Int'l Co., L.P., 854 So. 2d 529, 537-38 (Ala. 2002) (listing Alabama cases where arbitration clause found unconscionable and all involved consumer contracts); see also Process Am., Inc. v. Cynergy Holdings, LLC, 839 F.3d 125, 138 n.6 (2d Cir. 2016) ("Business entities negotiating in a commercial setting do not warrant any special solicitude as 'unsophisticated' parties simply because they are new to the industry and choose to forego representation by counsel."); Remza Drywall Inc. v. W.G. Yates & Sons Constr., No. 1:07CV106-LG-JMR, 2007 WL 2033047, at *3 (S.D. Miss. July 10, 2007) (finding no procedural unconscionability because "the parties to the subcontracts at issue were two corporations contracting for over six million dollars['] worth of drywall work").

Defendant Harbert also offers the "Standard Amendment to the Subcontract" as evidence that Plaintiff "freely and fairly negotiated the Subcontract." (Def. Harbert's Reply Supp. Mot. to Compel Arbitration, at 10; Subcontract Attach. A, Doc. 1-1, at 85- 106.) Plaintiff declines to counter this argument, and the Court finds there is no evidence that Plaintiff lacked the ability to negotiate any contract provision if it so chose. Cf. Avid Eng'g, Inc. v. Orlando Marketplace Ltd., 809 So. 2d 1, 5 (Fla. Dist. Ct. App. 2001) (finding arbitration agreement not procedurally unconscionable when "[i]n fact, there was evidence that the parties negotiated and modified many of the terms of the contract"). Thus,

15

Plaintiff's challenge also fails because the provision is not procedurally unconscionable. The Court now discusses whether Defendant Harbert may elect arbitration of the specified claims.

## C. Defendant Harbert's Ability to Elect Arbitration

Because the FAA creates a presumption in favor of arbitrability, Paladino v. Avnet Comput. Techs., Inc., 134 F.3d 1054, 1057 (11th Cir. 1998), any doubts concerning the scope of arbitral issues must be construed in favor of arbitration, Mitsubishi Motors, 473 U.S. at 626. The Eleventh Circuit holds that if parties intend to exclude categories of claims from their arbitration agreement, the parties must clearly express such intent. Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1222 (11th Cir. 2000). In other words, issues will be deemed arbitrable unless it is clear that the arbitration agreement intentionally omits them. First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 945 (1995). Defendant Harbert argues it may elect to arbitrate Counts I, II, and IV under paragraph 29, sections (c) and (e).

### 1. Non-Miller Act Claims Under Paragraph 29 Section (c)

As to its first argument, Defendant Harbert asserts that Plaintiff's non-Miller Act claims[8] against it are arbitrable under

---

[8] In its Complaint, Plaintiff brings the Miller Act claim, Count III, against all Defendants. (Compl., ¶¶ 26-30.) Nevertheless, Defendant Harbert maintains that "Count III . . . is asserted against the Sureties, not [Defendant] Harbert." (Def. Harbert's Reply Supp. Mot. to Compel Arbitration, at 2.) At present, the Court declines to decide whether Count III applies to Defendant Harbert because no party advocates to arbitrate Count III.

Paragraph 29(c).[9]   (Def. Harbert's Mot. to Compel Arbitration, at 4-7.)   Defendant Harbert acknowledges that its ability to choose arbitration is restrained by section (c)'s language: "Unless suit is brought under the Miller Act."   (Def. Harbert's Reply Supp. Mot. to Compel Arbitration, at 2.)   According to Defendant Harbert, "Paragraph 29(c) provides for arbitration of any claim that [Defendant] Harbert elects to arbitrate, except for a Miller Act claim."   (Id.)   Plaintiff's stance in opposition is that if it brings a Miller Act count in the complaint, the "suit" is then brought under the Miller Act and Defendant Harbert may not elect arbitration.   (Pl.'s Resp. Opp'n Mot. to Compel Arbitration, at 4-7.)

The dispute here is one of contract interpretation.[10]   The important part of the sentence at issue is: "Unless suit is brought under the Miller Act . . . , should disputes between the parties fail to be resolved at mediation then, at Contractor's sole

---

[9] No party argues the general provision of the dispute resolution clause fails to cover all of Plaintiff's claims because it governs "[a]ll disputes between . . . [Defendant Harbert] and [Plaintiff] related in any way to this Subcontract, the Work[,] or the Project." (Subcontract, ¶ 29.)  As discussed below, paragraph 29 section (c) contains the disputed coverage restriction.

[10] Although there is a presumption that a dispute is arbitrable whenever not expressly excluded, "a party cannot be required to submit to arbitration any dispute which it has not agreed so to submit." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 314 (2010) (citation omitted).  As such, courts must determine whether the arbitration agreement covers the dispute at issue, and to do so, courts may use standard principles of contract interpretation. Id. at 296; see also See Cavalier Mfg., Inc. v. Jackson, 823 So. 2d 1237, 1242 (Ala. 2001) ("The question whether an arbitration clause in a contract requires arbitration of a given dispute remains a matter of state-law contract interpretation."), overruled on other grounds by Ex Parte Thicklin, 823 So. 2d 723 (Ala. 2002); Seaboard Coast Line R.R. v. Trailer Train Co., 690 F.2d 1343, 1348 (11th Cir. 1982).

election, the parties shall submit the disputes to either binding arbitration or to litigation." The question boils down to, then, whether "suit" refers only to a Miller Act count within a complaint or an entire complaint if at least one count is a Miller Act count.

a. *Contract Interpretation Legal Standard*

Under Alabama law, contract "interpretation is guided by the intent of the parties." Allied-Bruce Terminix Cos. v. Dobson, 684 So. 2d 102, 110 (Ala. 1995). "The intent of the contracting parties is discerned from the whole of the contract. Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning," absent ambiguity. Cavalier Mfg., 823 So. 2d at 1242; Allied-Bruce Terminix, 684 So. 2d at 110. Ambiguity exists in a contract clause if, "when given the context," "it is reasonably susceptible of more than one meaning." Madison Cty. v. Evanston Ins. Co., 340 F. Supp. 3d 1232, 1271 (N.D. Ala. 2018) (emphasis omitted) (applying Alabama law); In re Knepp, 229 B.R. 821, 847 (N.D. Ala. 1999) (citing Voyager Life Ins. Co. v. Whitson, 703 So. 2d 944, 948 (Ala. 1997)). Whether an ambiguity exists "is a question of law to be determined by the court." Allied-Bruce Terminix, 684 So. 2d at 110. In interpreting language:

> [T]he mere fact that a word or a phrase is not defined in a document does not mean that the word or phrase is inherently ambiguous. In the absence of a definition,

18

> the court should construe the word or phrase according
> to the meaning a person of ordinary intelligence would
> reasonably give it.

Madison Cty. v. Evanston Ins. Co., 340 F. Supp. 3d 1232, 1271 (N.D. Ala. 2018) (quoting Hall v. Envtl. Litig. Grp., P.C., 248 So. 3d 949, 958 (Ala. 2017)). If the court finds the term susceptible to more than one reasonable meaning, "then the court must use established rules of contract construction to resolve the ambiguity." Id. (quoting Once Upon a Time, LLC v. Chappelle Props., LLC, 209 So. 3d 1094, 1097 (Ala. 2016)). All the while, the court must evoke the presumption in favor of arbitration, which requires courts to: "(1) apply[] the presumption of arbitrability only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand; and (2) adher[e] to the presumption and order[] arbitration only where the presumption is not rebutted." Granite Rock, 561 U.S. at 301.

### b. *Ambiguity*

To show the plain meaning, Plaintiff argues that the restriction "mentions 'suit' being brought under the Miller Act rather than a 'claim' under the Miller Act."[11] (Pl.'s Sur-Reply Opp'n Mot. to Compel Arbitration, at 3.) As discussed below, the

---

[11] Plaintiff also argues, "The plain meaning of that sentence is clear: if suit is brought under the Miller Act, [Defendant Harbert] does not have the ability to elect whether arbitration must be used to resolve disputes." (Pl.'s Resp. Opp'n Mot. to Compel Arbitration, at 5.) This argument is circular and avoids the heart of the issue.

terms "suit" and "claim" are not always as clear as Plaintiff suggests.

To determine whether the phrase "unless suit is brought under the Miller Act" is reasonably susceptible to more than one meaning, the Court uses dictionaries to determine the "plain, ordinary, and natural meaning." Once Upon a Time, 209 So. 3d at 1098. Merriam Webster defines "suit" as "an action or process in a court for the recovery of a right or claim." Suit, Merriam-Webster's Dictionary, available at https://www.merriam-webster.com/dictionary/suit?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last visited June 25, 2020). This definition associates suit with a singular claim and supports an interpretation that Plaintiff and Defendant Harbert's use of "suit" was intended to apply to the defined claim — the Miller Act claim. Black's law dictionary defines "suit" as "[a]ny proceeding by a party or parties against another in a court of law." Suit, BLACK'S LAW DICTIONARY (10th ed. 2014). The Tenth Edition supplements the definition by explaining:

> All these nouns [(]suit, lawsuit, action, case, and cause[)] denote proceedings instituted for the purpose of enforcing a right or otherwise seeking justice. Although they are all in frequent use as synonyms for a court proceeding, their etymological development has lent them shades of meaning that they still faintly bear. Suit stresses the sense of campaign . . . [,] a complainant's attempt to redress a wrong, enforce a right, or compel application of a rule. . . . In the legal sense, suit refers to an ongoing dispute at any stage, from the initial filing to the ultimate resolution.

20

Id. (emphasis omitted) (quoting Bryan A. Garner, *Garner's Dictionary of Legal Usage* 862-63 (3d ed. 2011)). Here, Black's Law Dictionary acknowledges that "suit" may encompass a broad "proceeding," can be limited to redressing a wrong or compelling application of a rule, and is often used interchangeably with other similar terms.[12]

In addition, courts often refer to a plaintiff's Miller Act claim as a Miller Act suit. United States v. Int'l Fidelity Ins. Co., 232 F. Supp. 3d 1193, 1194 (S.D. Ala. 2017) ("The amended complaint asserts six causes of action . . . : (1) suit on the payment bond, brought against both defendants pursuant to the Miller Act; (2) a breach of contract claim . . . ; and (3) a state law claim for violation of the Alabama Prompt Pay Act."); see also United States ex rel. Portland Constr. Co. v. Weiss Pollution Control Corp., 532 F.2d 1009, 1011, 1012, 1013 (5th Cir. 1976) (stating "there is no inconsistency between arbitration and a subsequent suit on the Miller Act bond"); United States ex rel. Capolino Sons, Inc. v. Elec. & Missile Facilities, Inc., 364 F.2d 705, 708 (2d Cir. 1966) ("[W]hen [the FAA] is applicable, [it] quite clearly is broad enough to include Miller Act suits within

---

[12] The Court also acknowledges that in other contexts, what an action or claim encompasses is up to reasonable dispute. See Jackson v. Equifax Info. Servs., LLC, No. CV 119-096, 2020 WL 476698, at *1-2 (S.D. Ga. Jan. 29, 2020) (explaining the Eleventh Circuit recently clarified that Federal Rule of Civil Procedure 41 contemplates dismissing an "action," which does not cover dismissing less than all claims in a lawsuit, yet encompasses all claims against a particular defendant).

its scope, and, with equal clarity, it gives the parties an enforceable right to agree to refer to arbitration differences arising under their contract."); Cent. Rock Corp. v. Horton Constr. Co., No. 2:13-CV-00406-PM-KK, 2013 WL 12184300, at *5 (W.D. La. July 31, 2013) ("[T]he subcontractor pursued arbitration against a contract and then filed a Miller Act suit against the contractor and its non-arbitrating surety."). But see United States v. David Boland, Inc., No. 6:05-cv-549-Orl-19JGG, 2006 WL 2683304, at *3 (M.D. Fla. Sept. 18, 2006) ("In Miller Act suits, state law governs whether a contractor materially breached a contract or engaged in active interference with respect to a contractual obligation."); see also United States ex rel. Cleveland Constr., Inc. v. Stellar Grp., Inc., No. 4:16-CV-179 (CDL), 2019 WL 338887, at *1 (M.D. Ga. Jan. 28, 2019) (The plaintiff "brought this breach of contract and Miller Act suit.").

Lastly, the Court looks to the Miller Act for context. The Miller Act explains, "Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title" who does not receive timely payment after completing performance "for which the claim is made[,] may bring a civil action on the payment bond." 40 U.S.C. § 3133(b)(1). Here, the Miller Act's specifications and requirements apply to a claim on the payment bond, making no mention of additional claims that may be brought

arising out of the same transaction. In civil actions, courts routinely treat a Miller Act claim differently than any non-Miller Act claims. See Weiss Pollution Control, 532 F.2d at 1012 ("[W]e have been cited to no authority which stands for the proposition that a subcontractor who arbitrates in accordance with the terms of his subcontract thereby relinquishes his right to bring a subsequent Miller Act suit"); Int'l Fidelity Ins., 232 F. Supp. 3d at 1201 (staying Miller Act claim against surety pending arbitration of the subcontractor's contract and state law claims against the contractor); United States ex rel. Vining Corp. v. Carothers Constr., Inc., No. 5:09-CV-438 (CAR), 2010 WL 1931100, at *2, *4-5 (M.D. Ga. May 12, 2010) (compelling arbitration of the contract claims but not the Miller Act claim).

Based on the foregoing, the Court concludes only that there is no plain meaning; the phrase is reasonably susceptible to more than one meaning. It could mean, as Plaintiff postulates, the remainder of the sentence does not apply if a Miller Act claim is part of the action. The phrase could also mean that any Miller Act claims are not arbitrable but non-Miller Act claims remain subject to arbitration.

c. *Resolving the Ambiguity*

Because the phrase is reasonably susceptible to more than one meaning, the Court turns to rules of construction to resolve it. Ohio Cas. Ins. Co. v. Holcim (US), Inc., 744 F. Supp. 2d 1251,

1260 (S.D. Ala. 2010) (applying Alabama law).   The burden rests with Plaintiff to rebut the presumption favoring arbitration. Granite Rock, 561 U.S. at 301.   To interpret the ambiguity, one rule of construction "is that an agreement is to be viewed as a whole."   In re Jefferson Cty., 503 B.R. 849, 882 (N.D. Ala. 2013) (applying Alabama law).   In addition, courts must "give effect to the intentions of the parties by, among other things, (1) taking into account the practical construction put on the language of the agreement by the parties, . . . (2) giving words their ordinary meanings, . . . and   (3)   considering   the   surrounding circumstances."   Id. at 882-83 (internal citations omitted); Voyager Life Ins., 703 So. 2d at 949 (If the textual rules do not dictate an outcome, "the surrounding circumstances, including the practical construction put on the language of the agreement by the parties to the agreement, are controlling in resolving the ambiguity.").

Examining the whole of the contract does little to resolve the ambiguity.   Analyzing the ordinary meaning of the words used also fails to clarify the ambiguity, having previously analyzed the ordinary meaning to reveal the ambiguity.   As such, the Court turns to the practical construction and surrounding circumstances to gain an understanding of Plaintiff and Defendant Harbert's intent within the arbitration provision.

Plaintiff argues that "[t]he Phrase '[u]nless suit is brought under the Miller Act' is placed at the beginning of the clause," thus, "it qualifies everything that comes after it." (Pl.'s Sur-Reply Opp'n Mot. to Compel Arbitration, at 2-3.)   To support its argument that the remainder of section (c) is inapplicable in the presence of a Miller Act count, Plaintiff brings the Court's attention to the choice of forum provision within the latter part of section (c). (Pl.'s Resp. Opp'n Mot. to Compel Arbitration, at 4, 5.)   Plaintiff alleges that the Miller Act requires its Miller Act count to be brought in this Court. (Id. at 5.)   The choice of forum provision within section (c) designates the United States District Court for the Northern District of Alabama as the proper forum. (Subcontract, ¶ 29(c).)   Therefore, if Plaintiff brings a Miller Act count, the Miller Act provides the appropriate forum and the choice of forum provision within section (c) is rendered moot. (Pl.'s Resp. Opp'n Mot. to Compel Arbitration, at 4, 5.)

In opposition, Defendant Harbert provides justification for why the Miller Act exception was included: to comply with Congress' 1999 amendment to the Miller Act, which limits waiver of Miller Act lawsuits.   (Def. Harbert's Reply Supp. Mot. to Compel Arbitration, at 3 (The arbitration provision "does not intend to restrict [Plaintiff]'s right to bring a civil action on a payment bond.   However, Paragraph 29(c) unquestionably allows [Defendant]

Harbert to insist on arbitration of non-Miller Act disputes with [Plaintiff].").)

First, it is uncertain whether Plaintiff's Miller Act claim could have been brought in the Northern District of Alabama. The Miller Act specifies, "a civil action . . . must be brought . . . (B) in the United States District Court for any district in which the contract was to be performed and executed." 40 U.S.C. § 3133(b)(3). The statute allows for the possibility that more than one district may satisfy the requirement, and the Subcontract provides it was "executed[] and at least in part performed within the jurisdiction of the United States District Court for the Northern District of Alabama." (Subcontract, ¶ 29(c).) Second, even if the Northern District of Alabama is an improper venue for the Miller Act claims here, courts routinely split Miller Act counts from others (as previously discussed), and parties often arbitrate non-Miller Act disputes while bringing civil actions under the Miller Act to preserve Miller Act claims. See, e.g., Weiss Pollution Control, 532 F.2d at 1013. Finally, the Court finds little practical justification for treating all counts in a complaint differently simply because one count is a Miller Act count. The Miller Act does not require that all adjoining counts in a civil suit be treated the same as the Miller Act count, and the waiver limitations apply only to a Miller Act payment bond claim.

26

In conclusion, Defendant Harbert shows the arbitration agreement is ambiguous about whether it covers non-Miller Act counts within a complaint. After attempting to resolve the ambiguity, the Court lacks "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" — Counts I, II, and IV against Defendant Harbert. Auto Owners Ins., Inc. v. Blackmon Ins. Agency, Inc., 99 So. 3d 1193, 1196 (Ala. 2012) (quoting Ex Parte Colquitt, 808 So. 2d 1018, 1024 (Ala. 2001) (quoting United Steelworkers of Am. v. Warrior Gulf & Navigation Co., 363 U.S. 574, 582-83 (1960))). Thus, Plaintiff did not rebut the presumption in favor of arbitration, and "any doubts concerning the scope of arbitral issues" — including problems with the "construction of the contract language itself" — "should be resolved in favor of arbitration." Ex Parte Colquitt, 808 So. 2d at 1022 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). The Court finds Defendant Harbert may elect to arbitrate Plaintiff's non-Miller Act counts against it under section (c).

   2. Right to Choose Forum in Absence of Authorization Under
      Paragraph 29 Section (e)

Paragraph 29(e) provides: "[Plaintiff] agrees that should it initiate litigation or arbitration without first obtaining [Defendant Harbert]'s authorization as to choice of forum, [Defendant Harbert] shall have the absolute and sole right to

transfer the disputes to the other forum." Defendant Harbert argues that section (e) allows it to elect arbitration of any claims because Plaintiff failed to obtain Defendant Harbert's "authorization as to choice of forum," thus triggering Defendant Harbert's "absolute and sole right to transfer the disputes" to arbitration. (Def. Harbert's Mot. to Compel Arbitration, at 7.)

Plaintiff responds, "[Defendant Harbert] ignores that the clause granting it the purported ability to choose a forum, Article 29(c), is rendered moot in the presence of a suit brought under the Miller Act." (Pl.'s Resp. Opp'n Mot. to Compel Arbitration, at 5.) Plaintiff repeats its argument that the phrase "[u]nless suit is brought under the Miller Act" "qualifies everything that comes after it and thereby qualifies the ability to select a dispute resolution forum on suit not being brought under the Miller Act." (Id. at 6-7.)

The Court need not engage here in a detailed analysis. Even if Plaintiff is correct and section (e) applies only "unless suit is brought under the Miller Act," the Court previously found that this language is ambiguous and Plaintiff failed to overcome the presumption favoring arbitration. As such, Defendant Harbert has the "right to transfer the disputes to [arbitration]."

## D. Status Pending Arbitration

According to Defendant Harbert, "The Miller Act bond claims in the Complaint against [Sureties] should be stayed while

[Defendant] Harbert and [Plaintiff] arbitrate their disputes."
(Def. Harbert's Mot. to Compel Arbitration, at 6.) Numerous cases
support staying Miller Act claims against sureties pending
arbitration of a subcontractor's claims against a contractor.[13]
Int'l Fidelity Ins., 232 F. Supp. 3d at 1200-01, 1200 n.7
(collecting cases). Plaintiff fails to address the possibility
that arbitration is appropriate; consequently, Defendant Harbert's
request to stay this action pending arbitration is unopposed. The
FAA provides:

> If any suit or proceeding be brought in any of the courts
> of the United States upon any issue referable to
> arbitration under an agreement in writing for such
> arbitration, the court in which such suit is pending,
> upon being satisfied that the issue involved in such
> suit or proceeding is referable to arbitration under
> such an agreement, shall on application of one of the
> parties stay the trial of the action until such
> arbitration has been had in accordance with the terms of
> the agreement, providing the applicant for the stay is
> not in default in proceeding with such arbitration.

9 U.S.C. § 3. Because the Court finds Plaintiff's Counts I, II,
and IV against Defendant Harbert arbitrable, the Court grants
Defendant Harbert's request to stay this action pending
arbitration.

---

[13] The Eleventh Circuit has also acknowledged that the principle that "a party
cannot be required to submit to arbitration any dispute which he has not agreed
so to submit" "might result in 'piecemeal litigation[.]' [Nevertheless,] the
court must 'rigorously enforce' the agreement of the parties." Hanover Ins.,
611 F. App'x at 588 (quoting United Steel Workers of Am., 363 U.S. at 582;
Nobles v. Rural Cmty. Ins. Servs., 122 F. Supp. 2d 1290, 1295 (M.D. Ala. 2000)
(citing Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218-21 (1985))).

## IV. CONCLUSION

The Court **GRANTS** Defendant Harbert's motion to compel arbitration and stay pending arbitration. (Doc. 13.) **IT IS HEREBY ORDERED** that (1) Plaintiff and Defendant Harbert **SHALL ARBITRATE** Counts I, II, and IV of the complaint; and (2) this entire case — including counts against non-arbitrating parties — is **STAYED** pending arbitration. Plaintiff and Defendant Harbert **SHALL** file a joint status report with the Court every **NINETY (90) DAYS** until the arbitration has concluded.

**ORDER ENTERED** at Augusta, Georgia, this 23rd day of July, 2020.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA